### ENOS vs. BROWN.

in a case where personal property is attached on mesne process, if execution be taken out and delivered to the same officer, who served the attachment, within thirty days from the time final judgment was rendered in the suit, it is a taking of the property, in execution within the meaning of the 33d section of the judiciary act ; and the property is not discharged from the attachment, although the execution be not actually levied upon the property within thirty days.

*Windsor,*
*August.*
*1814.*

THIS was a writ of error brought to this Court, to reverse a judgment, rendered by the County Court, for the County of Windsor, in an action on the case, brought before that Court by Pascal P. Enos, the plaintiff in error, against Israel P. Brown, the defendant in error. The record of which judgment brought into this Court, is as follows :

" Israel P. Brown of Plymouth, in the County of Windsor is attached to answer to Pascal P. Enos of Woodstock, in the said County of Windsor, Sheriff of said County, in a plea of the case for that at Plymouth, on the 17th day of June, 1811, the plaintiff was Sheriff of said County, and had in his hands a writ of attachment, to him

directed, in favor of Seth Hodges of Pomfret, in said County, against Asa Wheeler and Daniel Brown, both of said Plymouth, which writ was dated the day and year last aforesaid, and made returnable before the County Court for the County of Windsor, on the third Monday of September then next.   And the plaintiff, Sheriff as aforesaid, by virtue of said writ, attached two bay coloured horses, of the value of one hundred dollars; and one black cow, of the value of sixteen dollars ; and one two-horse waggon, of the value of forty dollars, as the property of said Daniel Brown, and gave notice to the said Daniel, as the law directs, and returned the said writ to the said Court, to which it was made returnable, with a return of his doings thereon endorsed.   And the plaintiff on the same seventeenth day of June aforesaid, at the request of the said Israel P. Brown, delivered to him the said horses, cow and waggon, so attached, as aforesaid, for safe keeping, during the pendency of the suit aforesaid; and in consideration thereof, the said Israel P. Brown, by his receipt in writing of that date, acknowledged the receipt of the said horses, cow and waggon, and promised to deliver the same when demanded.   And such proceedings were had by the said Hodges, in his said suit, that, at the March term of said Court, in the present year 1812, he recovered a regular judgment against the said Daniel, in his suit aforesaid, for the sum of $276,39 damages, and $10,21, costs of suit.   And, within thirty days after the rendition of said judgment, the said Hodges demanded of the said Enos, the said horses, cow and waggon, for the purpose of levying thereon his said execution, which he had then prayed out on said judgment, and put into the hands of the said Enos, to collect.   And the plaintiff afterwards, to wit : on the 29th day of April last past, then having the said execution in his hands, in full life, did demand of the defendant, to deliver to him the said horses, cow and waggon ; yet the defendant refused, &c."

And now the parties appear here in Court, and the defendant, by his attorney C. Marsh, defends, pleads and says, that he did not assume and promise in manner and form as the plaintiff in his declaration hath alledged, and thereof puts himself on the country for trial; and the plaintiff by his attorney, T. Hutchinson doth the like.   The record, after reciting the empannelling of the jury proceeds—" And the said Enos, then and there proved to the jury all the facts set forth in his said declaration ; and proved that the said

*Windsor*,
August.
1814.

Enos
*vs.*
Brown.

horses, cow and waggon, were demanded of him the plaintiff, by the said Hodges within thirty days from the rendition of said judgment, for the purpose of levying said execution thereon ; and that the said execution was at the same time, delivered by the said Hodges to the said Enos, being then Sheriff as aforesaid, with directions for him to levy the same on said horses, cow and waggon. And that after the expiration of thirty days, and within sixty days after the rendition of said judgment, having said execution in full life, he the said Enos demanded the same property of the said Israel P. Brown, for the purpose of levying said execution thereon.

And the counsel for the said Israel P. Brown did then and there object, and insist before the said Court and jury, that in point of law, the plaintiff ought not to recover, because he did not make a demand of the said property, of him the defendant, within thirty days from the rendition of said judgment.

And the counsel for the said Enos, did then and there, insist, before the said Court and jury, that as said Hodges had demanded said property of said Enos, and delivered to him, then Sheriff as aforesaid, the said execution, within thirty days from the rendition of said judgment, for him to levy the same on said property, the said property was holden to satisfy said execution. And the said Enos was holden to produce the same, for the purpose of satisfying said execution ; and that it was not necessary for the said Enos, to demand said property within thirty days from the rendition of said judgment.

And the Chief Judge of the Court, did then and there give in charge to the Jury, that it was necessary in point of law, for the said Enos to have demanded, the said property of the defendant, Israel P. Brown, within thirty days from the rendition of said judgment, in order to recover upon said receipt : and, with that charge, submitted the cause to the consideration and decision of the jury, who returned their verdict into Court, that said defendant, did not assume and promise in manner and form, as the plaintiff had in his decleration alledged, and found for the defendant his costs. The bill of exceptions concluded in the usual form and was allowed and signed by the judges."

The plaintiff assigned for error the misdirection of the judge in his charge to the jury.

The defendant pleaded in *nullo est erratum.*

*T. Hutchinson,* for the plaintiff.   Where goods and chattles are attached on mesne process, and delivered on a receipt to a third person, they remain in the custody of the law, and are, to all legal purposes still in the custody of the officer, who served the attachment, who is alone responsible to the creditor, that the property shall be forthcoming to satisfy his execution, when obtained.   On delivery of the execution to the officer in due time, the property attached is instantly in execution, without any formal act of the officer.   The receiptor cannot excuse himself, for not delivering it if properly demanded, at any time within the life of the execution; proof, therefore, of a demand on the receiptor, within that time, although after the expiration of the thirty days from the rendition of the judgment, is sufficient to charge him.   The opinion of the judge as given to the jury in his charge, was, therefore clearly erroneous.

*C. Marsh,* for the defendant.   To continue the lien of the creditor on goods and chattles attached on mesne process, not only must the execution be put into the hands of a proper officer within thirty days from the rendition of final judgment in the suit, but the property must be actually taken in execution within the thirty days. The delivery of the property, in such case to a receiptor, is for the benefit of the debtor, and it is supposed to go into his hands.   But if the property remain in the hands of the receiptor, if the execution be not actually levied upon it within the time prescribed by law, and the debtor call for it, as being discharged from the attachment, the receiptor must deliver it to him, or he will render himself liable to an action.   If he deliver ti to the debtor, according to the doctrine advanced by the plaintiff's counsel, he will be liable to the officer.   At any rate, he cannot be held liable in such case, unless he has had notice of the execution, which does not appear in this case.   It is made necessary by the 33d section of the judiciary act, that goods attached, be actually taken in execution, within the thirty days, if not so taken they are discharged from the attachment. The words of the act are, " That when the goods or chattels of any person shall be taken on mesne process, the same shall be holden thirty days from the time that final judgment shall be rendered in the suit ; and unless the plaintiff in such suit, shall, within the term of thirty days, from the time of rendering such judgment, as

*Windsor,*
August.
1814.

Enos
*vs.*
Brown.

aforesaid take such property in execution, the same shall be discharged from such process ; and shall be no farther liable to answer such judgment, than though the same had not been attached." If then there be not an actual formal taking of the property in execution, it will be discharged, whether in the hands of the officer or receiptor. The opinion of the Court below, was, therefore correct, that, the property, not having been taken on the execution, or demanded of the receiptor, within thirty days from the rendition of the judgment, was discharged from the attachment. The receiptor was no longer holden to keep the property, or to deliver it for the purpose of satisfying the execution ; but it belonged to the debtor free and clear from all the consequences of the attachment. If any question remains between the attaching creditor and the officer, it can neither affect the owner or receiptor of the property. And, as the officer had delivered the property on receipt, and had taken an express promise for the re-delivery of it on demand, he had parted with the custody of it and relied on the promise, there can be no colour for saying, that the delivery of the execution, to him by the creditor, was either an actual or virtual taking of the property in execution.

CHIPMAN, Ch. J. delivered the opinion of the Court.

In this case the writ of execution was delivered to the same officer who served the attachment ; and the question is, whether the delivery of the execution, to such officer, is a taking of the property in execution, within the true intent and meaning of the 33d section of the judiciary act. The clause in this section " unless the plaintiff in such suit, shall within the term of thirty days from the time of rendering such judgment as aforesaid, take such property in execution, the same shall be discharged &c," is clearly not to be construed literally, for the creditor cannot personally take the property in execution ; but, the true construction is, shall cause such property to be charged in execution by a proper officer. Personal property, attached on mesne process is considered as in the custody of the law, in the keeping of the officer who served the attachment, for the purpose of satisfying the execution, which may be obtained in the suit, and is on the delivery of the writ of execution to him, by that very act, charged, or taken in execution. In this case, the creditor, within thirty days from the rendition of the

judgment, delivered the execution to the same officer who served the attachment, and who had the legal custody of the property. The officer, then, in the true sense of the law had the property in execution, and he had until the return day of the execution, to levy the money of that property.   He is not bound, in such case to proceed immediately, but with due diligence, for which he is accountable to the creditor only.

*Windsor,*
August.
1814.

Enos
*vs.*
Brown.

The case is analogous, to that of a person in gaol on mesne process.   By the 39th section of the judicary act it is provided, " that when any person shall be attached on mesne process, and shall be committed, agreeably to the provision of this act, and shall be in gaol, at the time final judgment shall be rendered against him, he shall be discharged from confinement, unless the plaintiff in such action, within fifteen days after rendering of final judgment as aforesaid, shall charge him with execution." Now, in this case, the debtor being in gaol, a prisoner in the custody of the Sheriff, a delivery of the execution to the Sheriff, is charging such prisoner in execution.   It would be so, if the debtor were in gaol, in the custody of the Sheriff on process in favor of a third person, and not on process in favor of the plaintiff.   This is a clear, and well settled doctrine of the common law.   And, from the common law we are to ascertain what the legislature meant by charging a debtor with execution.   It is true, that the attachment of property, as authorized by our statute, was unknown to the common law; but, being introduced by statute, it comes within the analogy, the principles and reasons are the same, and the analogy holds good in most of the cases, which can be put.   But if the debtor be in gaol, in the custody of the Sheriff, and the creditor deliver his execution to a constable, who has no connection with the Sheriff, and has not the custody of the debtor, such delivery of the execution to the constable, will not charge the debtor in execution.   The creditor must, in such case, at his peril, see that the constable charge the debtor in execution, by delivering to the keeper of the gaol a copy of the execution, with his return of the commitment thereon indorsed, within the fifteen days.   So if the attachment of personal property on mesne process was made by the Sheriff, and the plaintiff deliver his execution to a constable, he does not thereby, charge the property in execution.   He must see that the execution be levied thereon, within thirty days, or a demand be made of the Sheriff, to

*Windsor*,
August.
1814.

Enos
*vs.*
Brown.

charge him in case the property has been eloigned. The same steps must be taken if the officer, who served the attachment shall be out of office. On the point now in question, the analogy is full and clear. If the Sheriff keep the gaol by deputy as he may, and usually does, the deputy has the immediate custody of the prisoner, yet if the execution be delivered to the Sheriff, the prisoner is charged in execution the same as though he was in the immediate keeping of the Sheriff. So, although, the officer, who serves an attachment on mesne process, deliver the property attached to some third person, on receipt for safe keeping as he lawfully may, yet the law considers the property in the custody of the officer ; and on the delivery of the execution to him, the property is immediately charged, or, to use the words of the Statute, is taken in execution. If the third person receiving the property for safe keeping, suffer it to be eloigned, the officer alone is accountable to the attaching creditor. In both cases, the officer has his remedy over against his substitute in case of delinquency. The gaoler as to the detention, or discharge of the prisoner, is under the direction and control of the Sheriff ; so is the person, who receives property for safe keeping which the Sheriff has attached.

As to the objection suggested by the defendant's counsel, that the promise contained in the receipt, shews that the custody of the property was changed, and that the officer relied solely on the promise, it is a sufficient answer, that the law would have implied the same promise, had no such promise been inserted in the receipt. It was never thought, that an express promise or a bond of indemnity to bail, took away their right to the custody of the principal, or to deliver him up in discharge of themselves. The Court are clearly of opinion, that the exceptions to the opinion of the County Court are well founded, that the judgment is erroneous and must be reversed.